FILED

2015 Apr-01  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ESSEX INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:14-CV-2138-VEH** |
| | ) |
| **J & J MASONRY LLC, HPH** | ) |
| **PROPERTIES LLC, BONNIE** | ) |
| **ADAMS, JOHN ADAMS, WENDY** | ) |
| **COOK, and WILLIAM COOK,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

This matter is before the court on plaintiff Essex Insurance Company's ("Essex") Motion For Default Judgment Against Defendant J & J Masonry LLC ("J&J Masonry"). (Doc. 19). Essex brought a Complaint for Declaratory Judgment on November 4, 2014 against J&J Masonry and the other listed defendants to seek a determination of its rights and obligations under five commercial liability insurance policies issued by Essex to J&J Masonry. (Doc. 1). J&J Masonry failed to answer or otherwise respond to the complaint, and so the clerk entered a default against J&J Masonry on January 30, 2015. (Doc. 18).

J&J Masonry has not responded to the Motion, and the deadline to do so passed on January 22, 2015. (*See* Doc. 3 at 23). Therefore, the Motion is under submission. For the reasons discussed below, the Motion is due to be granted.

## I.   STANDARDS

### A.   Motions For Default Judgment

In 2007, Judge Steele in the Southern District of Alabama summarized the appropriate standard for motions for default judgment:

> In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.,* 328 F.3d 1291, 1295 (11th Cir. 2003). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure." *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985).

> Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit against her for nearly two months after being served, entry of default judgment may be appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to defend the claims against them following proper service of process. In short, then, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party. *Flynn v. Angelucci Bros. & Sons, Inc.,* 448 F.Supp.2d 193, 195 (D.D.C.2006) (citation omitted).

> The law is clear, however, that [the defendant's) failure to appear and the Clerk's subsequent entry of default against her do not automatically entitle [the plaintiff) to a default judgment. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's

right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.,* 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004); *see also Descent v. Kolitsidas,* 396 F.Supp.2d 1315, 1316 (M.D.Fla.2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir.1997).

*Atl. Recording Corp. v. Carter*, 508 F. Supp. 2d 1019, 1021-23 (S.D. Ala. 2007) (internal citations omitted).

"The allegations must be well-pleaded in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08CV2033ORL22KRS, 2009 WL 4349806 at *2 (M.D. Fla. Nov. 24, 2009) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir.2009)). In making the determination as to whether the complaint is well pleaded, the court notes that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Mere conclusory statements in support of a threadbare recital of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,

1949, 173 L. Ed. 2d 868 (2009).

**B.      Substantive Law**

Alabama courts apply a manifestation of damages rule for determining when an insurance policy's defense and coverage obligations are triggered. In *U.S. Fidelity & Guaranty Co. v. Warwick Development Co.*, 446 So. 2d 1021 (Ala. 1984), the Alabama Supreme Court adopted "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time the complaining party was actually damaged." As a practical matter, this general rule means "the insurance that is in force at the time of the property damage … is applicable rather than insurance that was in force when the work was performed." *Id.*; *see also Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So. 2d 466 (Ala. 2002); *American States Ins. Co. v. Martin*, 662 So. 2d 245, 250 (Ala. 1995).

## II.     FINDINGS OF FACT[1]

**A.      The Underlying Lawsuits**

Bonnie Adams and John Adams ("the Adamses") are Alabama citizens and residents. At all relevant times, the Adamses owned a house located in the at 2291

---

[1] Because J&J Masonry had a default entered against it by the clerk of court, these facts are deemed admitted by default.

Abbeyglen Circle, Hoover, Jefferson County, Alabama. On March 29, 2011, the Adamses filed a lawsuit against HPH Properties LLC in the Circuit Court of Jefferson County, Alabama in a case styled *John and Bonnie Adams vs. HPH Properties, LLC et al.,* Case No. 1-CV-2011-901068. (Doc.1-6). According to the complaint, they closed on the purchase of the house located at 2291 Abbeyglen Circle, Hoover, Jefferson County, Alabama in July 2006. The Adamses had bought the home as an investment. During the first year of their ownership (i.e., July 2006 to July 2007), their tenant reported problems with the air conditioning. The Adamses contacted HPH Properties LLC, asked for that problem to be corrected, and were eventually told it had been corrected. At some point thereafter, the Adamses learned there were still problems with the air conditioning and that "Chinese drywall" had been used in the construction. The Adamses hired a third-party inspector, who identified several construction problems, including "the brick veneer is not installed properly; voids in mortar; improper or omitted weepholes". (Doc.1-6 ¶3, ¶¶13-17, 19)

Wendy and William Cook ("the Cooks") are Alabama citizens and residents. At the times relevant to this lawsuit, they owned a house located at 2279 Abbeyglen Circle, Hoover, Alabama. On September 17, 2010, the Cooks filed a lawsuit against HPH Properties LLC in the Circuit Court of Jefferson County, Alabama styled *William and Wendy Cook vs. HPH Properties, LLC et al.,* Case No.

1-CV-2010-903410. (Doc. 1-7) According to the complaint, they closed on the purchase of the house located at 2279 Abbeyglen Circle, Hoover, Alabama in August 2006. At some time after the Cooks moved into the home, they noticed some "issues" with the home, reported these issues to HPH, and were later told these issues had been fixed. According to the complaint, the Cooks "continued to have problems" including a "roof leak." Because they were "concerned," the Cooks hired a third-party inspector to examine the house. The inspector made them aware of several problems, including "brick veneer was improperly installed; no proper through wall flashings or weepholes observe; no proper flashings observed above lintels, below openings or at base of brick veneer; brick rowlocks do not have the proper slope." (Doc.1-7 ¶3, ¶¶15-20).

On June 26, 2014, HPH Properties LLC filed a third-party complaint against J & J Masonry LLC in each lawsuit. (Docs. 1-8, 1-9). In each of these third party-complaints, HPH Properties LLC essentially alleged J & J Masonry was responsible for the defects in the houses arising from J & J Masonry's brick masonry work on the exterior of each house and the damages arising therefrom as alleged by the underlying plaintiffs. (Docs. 1-8 and 1-9 ¶¶5-6, 10, 12, 15, 17-20, 22-23, 28, 31-32, and 34).

B.     **The Insurance Policies**

Essex insured J & J Masonry (under the name J & J Masonry Inc.) under five insurance policies issued and in effect between December 2009 and December 2014. (Docs.1-1, 1-2, 1-3, 1-4, 1-5). Policy 3DC7370 had a policy period from 12/22/2009 to 12/22/2010. (Doc.1-1). Policy 3DE8489 had a policy period from 12/22/2010 to 12/22/2011. (Doc. 1-2). Policy 3DJ3073 had a policy period from 12/22/2011 to 12/22/2012. (Doc. 1-3). Policy 3DM6396 had a policy period from 12/22/2012 to 12/22/2013. (Doc. 1-4). Policy 3DS2057 had a policy period from 12/22/2013 to 12/22/2014. (Doc. 1-5).

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM in all five Policies states in relevant part as follows:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**…**
**1. Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

    b.    This insurance applies to "bodily injury" and "property

damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

…

**SECTION V – DEFINITIONS**

…

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

17. "Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*See, e.g.*, Doc. 1-1 p.4, 16-18).

Policy 3DC7370 (Doc. 1-1) and Policy 3DE8489 (Doc. 1-2) have a COMBINATION CONSTRUCTION RELATED ENDORSEMENT which states in relevant part as follows:

9

The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

> (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;

> (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Doc. 1-1 at 23, Doc. 1-2 at 10).

Policy 3DJ3073 (Doc. 1-3) has a COMBINATION CONSTRUCTION RELATED ENDORSEMENT which states in relevant part as follows:

The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

> (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;

> (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Doc. 1-3 at 13).

Policy 3DM6396 (Doc. 1-4) and Policy 3DS2507 (Doc. 1-5) each has a PREEXISTING INJURY, LOSS OR DAMAGE EXCLUSION which states:

The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

(a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;

(b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Doc. 1-4 at 36, Doc. 1-5 at 39).

## III.   ANALYSIS

Essex seeks a default judgment under Rule 55(b) against J & J Masonry LLC declaring that it has no duty to defend or indemnify J & J Masonry in the underlying state court litigation under the five policies of insurance issued by Essex to J & J Masonry and in effect between December 2009 and December 2014.  (Doc. 20).

Once the clerk has made an entry of default against a defendant who has failed to answer or otherwise respond to the complaint, Rule 55 (b) allows for the court to enter judgment by default:

(b) [Default] Judgment. Judgment by default may be entered as follows:
...
(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein.  If the party against whom

11

> judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed. R. Civ. P. 55(b)(2).

The court finds that entry of a default judgment in favor of Essex and against Defendant J & J Masonry is appropriate under Rule 55(b). Essex has submitted affidavit testimony evidencing that Defendant J & J Masonry was duly served with a copy of the Summons and Complaint between November 6 and 10, 2014. (Doc. 17; *see* Doc. 7). Over ninety days have elapsed since the date on which J & J Masonry was served, and J & J Masonry has failed to answer or otherwise respond to Plaintiff's Complaint.

Judgment is also due to be granted under the insurance provisions. Accepting the allegations made in the Adamses' suit as true for purposes of this analysis, they acquired ownership of their house in July, 2006. (Doc. 1-6 ¶ 3). They first discovered the alleged property damage (which also, allegedly, caused their bodily injuries) during the first year that they owned their home— that is, by July of 2007 at the latest. (Doc. 1-6 ¶¶ 14-17). Similarly, according to the allegations in the Cooks' suit, they

12

closed on the purchase of their house in August, 2006 (Doc. 1-7 ¶ 3) and first discovered the alleged property damage (which also, allegedly, caused their bodily injuries) within a year of the purchase. (*Id.* at ¶¶14-19). Accordingly, both the Adamses and the Cooks have alleged damages which first began manifesting before the 12/22/2009 inception of Policy 3DC7370 and long before the 12/22/2010, 12/22/2011, 12/22/2012, and 12/22/2013 inception dates of the four other policies.

Each of the policies has exclusions for bodily injury and property damage "[w]hich first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy." (*See, e.g.*, Doc. 1-4 at 36). There are also exclusions for injury or damage that "is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an 'occurrence' which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy." (*See, e.g.*, Doc. 1-1 at 23). Together, these exclusions clearly bar coverage under the policies for the occurrences alleged in the state court lawsuits filed by the Adamses and the Cooks against J&J Masonry. Therefore, Essex is entitled to a judgment holding that it has no duty to indemnify or to defend J&J Masonry in both of these state cases.

## IV.   CONCLUSION

The Complaint does not seek money damages, but rather seeks only a declaratory judgment. Because damages are not sought, an evidentiary hearing is unnecessary and the court may adjudicate the matter of default "upon request of the plaintiff and upon affidavit of the amount due." Fed.R.Civ.P. 55(b)(1); *see, e.g., United States Artist Corporation v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

For the reasons outlined above, Essex's Motion for Default Judgment is due to be granted, and Essex is entitled to default judgment against J & J Masonry on its Complaint for a declaratory judgment that it has no duty to defend and indemnify J & J Masonry in the underlying lawsuits.

**DONE** and **ORDERED** this 1st day of April, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

14